# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | |
|---|---|
| MARY E. MOSS, on behalf of herself and others similarly situated, )<br>)<br>) | |
| Plaintiff, )<br>) | |
| vs. ) | Case No. 09-4030-CV-C-NKL |
| ) | |
| CENTRAL UNITED LIFE INSURANCE )<br>COMPANY, ) | <u>ORAL ARGUMENT REQUESTED</u> |
| ) | |
| Defendant. )<br>) | |

## <u>PLAINTIFF'S SUGGESTIONS IN SUPPORT OF MOTION TO CERTIFY CLASS</u>

Respectfully Submitted,

Michael K. Cully     MO Bar No. 26794
Angela K. Drake     MO Bar No. 35237
LOWTHER JOHNSON, LLC
901 St. Louis, 20th Floor
Springfield, Missouri 65806
(417) 866-7777
Fax # (417) 866-1752

Robert A. Horn     MO Bar No. 28176
Joseph A. Kronawitter     MO Bar No. 49280
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
(816) 421-0700
Fax # (816) 421-0899

**ATTORNEYS FOR PLAINTIFF MARY MOSS**

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS ...................................................................................1

II.  LEGAL STANDARDS ...................................................................................4

III. PROPOSED CLASS DEFINITIONS...............................................................6

IV.  LEGAL ANALYSIS AND APPLICATION.......................................................7

     A.   RULE 23(A) REQUIREMENTS ARE SATISFIED...............................7

     B.   RULE 23(B)(2) REQUIREMENTS ARE SATISFIED .......................12

     C.   RULE 23(B)(3) REQUIREMENTS ARE SATISFIED ………………....…14

V.   CLASS NOTICE ………………………………………………………………..22

VI.  APPOINTMENT OF CLASS COUNSEL  ........................................................22

VII. CONCLUSION………………………………………………………………….23

VIII. REQUEST FOR ORAL ARGUMENT …………………………………………23

Case 2:09-cv-04030-NKL   Document 25   Filed 07/15/09   Page 2 of 29

# TABLE OF AUTHORITIES

## Cases

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ....................................................10

*Am. Family Mutual Ins. Co. v. Ward*, 789 S.W.2d 791 (Mo. Banc 1990).......................................6

*Am. Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94 (D. Md. 1974) ...........................................................9

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ....................................................................12

*Ark. Ed. Ass'n v. Board of Ed.*, 446 F.2d 763 (8th Cir. 1971) ......................................................12

*Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423 (E.D. Pa. 1994)...................................17

*Baffa v. Donaldson, Lufkn & Jenrette Sec. Corp.,* 222 F.3d 52 (2d Cir. 2000)............................12

*Beckmann v. CBS, Inc.,* 192 F.R.D. 608 (D. Minn. 2000) .............................................................11

*Blades v. Monsanto Co.,* 400 F.3d 562 (8th Cir. 2005) ............................................................5,16

*Bradford v. AGCO Corp.*, 187 F.R.D. 600 (W.D. Mo. 1999) ...................................................12,14

*Brown v. Cameron-Brown Co.*, 92 F.R.D.32 (D.C. Va. 1981)...................................................20,22

*Carnegie v. Household Int'l, Inc.,* 376 F.3d 656 (7th Cir. 2004) .................................................22

*Carpe v. Aquila, Inc.*, 224 F.R.D. 454 (W.D. Mo. 2004) .......................................................11, 15

*Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668 (M.D. Ga. 1996) ...........................................17

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) .................................9, 10, 14, 16

*Doran v. Missouri Dept. of Social Services*, 251 F.R.D. 401 (W.D. Mo. 2008) ...........................5

*Dumas v. Albers Med., Inc.,* 2005 WL 2172030 (W.D. Mo. 2005)................................................7

*Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29 (E.D. N.Y. 2008)...........................................21

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974)............................................................6, 21

*Elizabeth M. v. Montenez,* 458 F.3d 779 (8th Cir. 2006).............................................................5

*Farmers v. Missouri Dep. Corr.,* 977 S.W.2d 266 (Mo. banc 1998)............................................17

*Fielder v. Credit Acceptance Corp.,* 175 F.R.D. 313 (W.D. Mo. 1997) ........................................9

*Fisher Bros. v. Mueller Brass Co.,* 102 F.R.D. 570 (D. Pa. 1984) ...............................................19

*Forbush v. J.C. Penney Co.,* 994 F.2d 1101 (5th Cir.1993) ..............................16

*Gelb v. AT&T*, 150 F.R.D. 76 (S.D.N.Y. 1993).........................................13

*Gen. Tel. Co. of Swift. v. Falcon*, 457 U.S. 147 (1982) ................................15

*Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.,* 997 S.W.2d 510 (Mo. Ct. App. 1999) ..............6

*In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609 (D. Kan.1995) ................................19

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.,* 2006 WL 891362 (D. N.J.) ...................19

*In re Catfish Antitrust Litig.*, 826 F.Supp. 1019 (N.D. Miss. 1993) .......................................15, 19

*In re DRAM Antitrust Litig.,* 2006 WL 1530166 (N.D. Cal) .......................................19

*In re Linerboard,* 305 F.3d 145 (3d Cir. 2002).........................................................19

*In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D 493 (S.D.N.Y. 1996)..........................14

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .................................20, 21

*In re Teflon Products Liability Litig.,* 254 F.R.D. 354 (S.D. Iowa 2008).......................................7

*In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985)........................................................20

*In re Universal Services Fund*, 219 F.R.D. 661 (D. Kan. 2004) ........................................14

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001).......................19, 22

*In re Wirebound Boxes,* 128 F.R.D 268 (D. Minn. 1989)..............................................19

*In re Workers' Compensation*, 130 F.R.D. 99 (D. Minn. 1990)........................................22

*Jones v. NovaStar Financial Inc.*, 257 F.R.D. 181 (W.D. Mo. 2009) ...........................................12

*Freeman v. Central United Life Insurance Company,* (W.D. Mo. 08CV04077-NKL)...................1

*Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983)........................................17

*Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208 (Mo. banc 1992) ...........................................6

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) ....................................................17

*Norflet v. John Hancock Life Ins. Co.,* 2007 WL 2668936 (D. Conn.) .........................................20

*OOIDA v. New Prime, Inc.*, 213 F.R.D. 537 (W.D. Mo. 2002).....................................................11

*Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8th Cir. 1982).................................................9, 10, 11

*Sample v. Monsanto Co.,* 218 F.R.D. 644 (E.D. Mo. 2003) ...........................................................11

*Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 2003) ....................................................................9

*Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38 (S.D. Ny.1990) ........................19

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007)............16

*White v. Nat'l Football League,* 41 F.3d 402 (8th Cir. 1994) ...........................................................5

*Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975) .....................................................5

## Federal Statutes

28 U.S.C. § 2201.................................................................................................................................17
28 U.S.C. § 2202.................................................................................................................................13

## Federal Rules of Civil Procedure

Rule 23.............................................................................................................................. *passim*

## Other Authorities

Newberg, *Class Actions* (3d ed.) § 7.20 .................................................................6,10, 11, 15, 20

*Manual for Complex Litigation* § 21.222, at 270 (4th ed. 2005) ......................................................7

Wright & Miller, *Federal Practice and Procedure* § 1775 (3d ed. 2009).......................9,13, 14,16

Moore's *Federal Practice,* ¶ 23.45[2] (2d ed. 1995)...............................................................15, 22

# I.   STATEMENT OF FACTS

From 1986 to 1997, Commonwealth National Life Insurance Company ("Commonwealth") sold thousands of insurance policy return-of-premium riders (generally known within the industry as "ROP riders"). These riders bore several names, including: "Persistency Bonus and Withdrawal Benefit Riders", Persistency Bonus and Premium Refund Riders, Cash Value and Withdrawal Benefit Riders, Return of Premium Riders or Twenty Year Return of Premium Riders (hereinafter collectively referred to as the "Riders"). All of these Riders were the same form (PB-215-86), and identical in all material terms.

In 1997, Defendant Central United Life Insurance Company ("CUL") purchased Commonwealth's insurance policies, including all Riders, pursuant to a reinsurance and assumption agreement. By virtue of that agreement, CUL became Commonwealth's successor-in-interest and assumed all of its debts, obligations and administrative service requirements related to the Riders. (CUL's Answers and Objections to First Request for Admissions, Exh. 1 hereto, Nos. 1-2; Agreement for Reinsurance, Exh. 2 hereto).

The Riders were offered to individuals who purchased insurance policies, including cancer benefit health insurance policies (hereinafter referred to as "Policyholders", when describing someone who purchased a Rider). Policyholders paid an additional monthly premium for the Rider, separate and apart from the premium paid for the underlying insurance policy. (Exh. 1 hereto, No. 3).[1] The amount of premium paid for the Rider was determined at the Rider's inception and was adjusted thereafter by CUL. (Exh. 1, No. 4).

According to the explicit terms of the Rider, a Policyholder is eligible to receive two benefits in exchange for paying the Rider Premium: a Persistency Bonus, and an early

---

[1] It is Mrs. Moss' understanding that all written discovery conducted in the *Kent Freeman v. Central United Life Insurance Company* action (08CV04077-NKL), is applicable in this case by agreement of the parties, but that CUL may object that certain documents produced in the *Freeman* action specific to Kent Freeman are irrelevant.

1

Withdrawal Benefit. The Rider provides the following explanation regarding how Withdrawal

Benefits and Persistency Bonuses are paid:

### PERSISTENCY BONUS AND WITHDRAWAL BENEFITS

This provision applies to the person named as the insured on the effective date of the policy and includes the premiums and claims paid on all persons insured under the policy while this rider is in force. After the policy has been continuously in force on the life of such person for twenty (20) years, we will pay a one time Persistency Bonus Benefit. The value of the benefit will be 100% of the premiums paid on an annual basis less any claims paid. We will pay a Withdrawal Benefit: (a) if the named insured surrenders this policy after the sixth policy year but before the end of the 20th policy year; or (b) when we receive due proof that the named insured died prior to the payment of the Persistency Bonus Benefit; whichever is first to occur. The Withdrawal Benefit will be an amount equal to the Cash Value as of the date of surrender or death, less any claims paid. The Cash Value accumulation to the end of each policy year, without regard to any claim payments, is shown in the Persistency Bonus and Withdrawal Cash Value Table below. The values set forth in the Table assume that premiums have been paid for the full policy year and will be adjusted for any partial year payment. Any payment of the Withdrawal Benefit or the Persistency Bonus Benefit terminates this rider. This rider will also terminate when the amount of claims paid under the policy exceeds the value of the premiums paid and due over the 20 year period for which this rider was issued. The premium for this rider shall be discontinued on the date this rider terminates for any reason.

*See,* Rider of Plaintiff Mary Moss, attached hereto as Exhibit 3.[2]

Pursuant to the terms of the Rider, if a Policyholder submits health care claims under the

insurance policy attendant to their Rider, any Persistency Bonuses or Withdrawal Benefits

ultimately paid would be reduced by the amount of health care claims paid. The Rider terms also

state that if the amount of such health care claims exceed the total anticipated amount of Rider

premiums to be paid over the twenty year life of the Rider, the Rider would be cancelled with no

benefit payment.

The Rider includes the following table ("Table") that explains how a Persistency Bonus

or Withdrawal Benefit is calculated:

---

2 Mrs. Moss' husband, Ben Moss, purchased a cancer insurance policy (and the Rider at issue) in 1991, which provided coverage for him and Mrs. Moss. Ben Moss passed away in 2001. CUL paid Mrs. Moss a benefit under the Rider in the amount of $3,350.56 in April, 2002. This amount was less than what CUL was supposed to pay under the terms of the Rider, as set forth in Mrs. Moss' Complaint (DE 1).

2

## PERSISTENCY BONUS AND WITHDRAWAL CASH VALUE TABLES

This Table is based on each $1.00 of premium, on an annual basis. The values are applicable only at the ends of the policy years shown. During any policy year the amount of Cash Value will be calculated with due allowance for interest at 5% and payment of any fractional premiums. The amount of the Cash Value derived from the following Table will be reduced by the amount of any claims paid prior to the date of an event which results in any payment under this provision.

| Policy Year End | Cash Value | Policy Year End | Cash Value |
|---|---|---|---|
| 1 | $ 0 | 11 | $ 6.31 |
| 2 | 0 | 12 | 7.55 |
| 3 | 0 | 13 | 8.86 |
| 4 | 0 | 14 | 10.22 |
| 5 | 0 | 15 | 11.66 |
| 6 | .93 | 16 | 13.17 |
| 7 | 1.91 | 17 | 14.76 |
| 8 | 2.93 | 18 | 16.42 |
| 9 | 4.00 | 19 | 18.17 |
| 10 | 5.13 | 20 | 20.00 |

Exh. 3, pg. 2.

Thus, according to the unambiguous terms of the Rider, a Policyholder who held the Rider for 20 years would receive a Bonus of twenty dollars ($20) "based on each $1.00 of premium" paid. Per the Table, a Policyholder who surrendered the Rider between six and twenty years after its inception would receive a Withdrawal Benefit as determined by the Table.

With respect to calculation of the "cash value" amount referenced in the Table, the Rider states:

### CASH VALUES

The Cash Value shown in the Table below (at the end of any policy year) is determined on a five year preliminary term basis with an interest only accumulation at the rate of 5% a year compounded annually.

Exh. 3, pg. 1.

Thus, after a five year introductory period, the Cash Value of a Rider would accumulate 5% interest annually.

Over the life of the Rider, CUL dramatically increased premiums on all Riders. (Exh. 1, No. 8). For instance, in the State of Missouri, CUL implemented very substantial Rider premium

3

increases six times within five years. (See Exh. 4 hereto).[3]  For some Policyholders, this

amounted to as much as a 4,000% increase over the life of the Rider.

The Rider has stayed the same from its inception in 1986 to the present.  (Deposition of

CUL's President Daniel George, attached hereto as Exh. 4, pg. 17, pgs. 105-106)  The Rider has

been applied to every Policyholder in the same manner.  Exh. 4, pg. 106.  In terms of

determining how Persistency Bonus and Withdrawal Benefit payments were calculated, CUL has

interpreted and applied the Rider the same with respect to every Policyholder.  Exh. 4, pg. 107.

To date, CUL has not considered notifying Policyholders about the manner in which

CUL interprets the Rider, or determines Persistency Bonus or Withdrawal Benefit payments.

Exh. 4, pg. 108-109.

In 1991, Mrs. Moss and her husband purchased a cancer treatment policy and Rider.

(Exh. 4, pg. 17; Mrs. Moss' Insurance Policy, attached hereto as Exh. 8).

## II.    LEGAL STANDARDS

### A.    Class Certification

The determination of whether an action should be maintained as a class action is

governed by Federal Rule of Civil Procedure 23.  The Court has "wide discretion" in

determining whether certification of a class is appropriate. *White v. Nat'l Football League,* 41

F.3d 402, 407 (8th Cir. 1994).  It is well-settled that Rule 23 is to be construed liberally in order

to serve justice and promote judicial economy.  *Wright v. Stone Container Corp.*, 524 F.2d 1058

(8th Cir. 1975).  To determine whether class certification is appropriate, the Court may "conduct

a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.,* 400 F.3d

562, 567 (8th Cir. 2005).  This inquiry "involve[s] the consideration of what the parties must

---

3  Exh. 4 is a document submitted to state departments of insurance by CUL, and was produced by CUL in this
litigation.

prove." *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Doran v. Missouri Dept. of Social Services*, 251 F.R.D. 401, 404 (W.D. Mo. 2008)(citing cases).

When evaluating a proposed class, the Court must consider the substantive allegations of the complaint as true. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974). "The question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* Moreover, a well-pleaded complaint generally constitutes a *prima facie* showing for class certification, thereby shifting the burden to a party opposing the class. *Newberg on Class Actions* (3d ed.) § 7.20.

## B. Contract Interpretation

Mrs. Moss respectfully suggests that the following rules of contract construction should be considered by the Court, to the extent necessary, when performing a class certification analysis in this case.

When construing the terms of an insurance contract, the contract is enforced "as written" unless an ambiguity requires the court to impose various rules of interpretation. *Am. Family Mutual Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. Banc 1990). An ambiguity arises when contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to differing reasonable constructions. *Krombach v. Mayflower Ins. Co.*, 827 S.W. 2d 208, 210 (Mo. Banc 1992). An ambiguous insurance contract is construed **against the drafter of the contract**. *Id.* (emphasis added); *Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.,* 997 S.W.2d 510, 514

(Mo. Ct. App. 1999). An ambiguous term in an insurance contract is applied a meaning that would ordinarily be understood by the insured. *Krombach*, 827 S.W.2d at 210.

## III. PROPOSED CLASS DEFINITIONS

The Class definition identifies the persons entitled to relief, bound by the judgment, and entitled under Rule 23(c)(2) to the "best notice practicable" in a Rule 23(b)(3) action. *Manual for Complex Litigation* § 21.222 at 270 (4th ed. 2005); Rule 23(c)(1)(B).[4]

### A. The Multi-state Class

Mrs. Moss moves for certification of a multi-state class of Policyholders defined as follows:

> All past and present Policyholders throughout the United States who purchased a Rider from CUL or Commonwealth National Life Insurance Company, and all actual or intended beneficiaries under such Riders (the "Multi-state class").[5]
>
> Specifically excluded from the class are: (a) federal judges who have presided over this case; (b) persons employed by CUL, and (c) affiliates of CUL.

Mrs. Moss is an individual who received a payment under a Rider as an actual beneficiary and therefore, is a member of the Multi-state Class. In addition, Mrs. Moss and the members of the putative Multi-state Class share the same interests, and their claims and legal theories are identical.

Mrs. Moss submits that a multi-state class is appropriate, as set forth in her legal analysis herein. However, to the extent the Court determines that the proposed Multi-state Class varies

---

4  A proper class definition allows the Court to identify its members by an objective standard and includes the class representative. *See Dumas v. Albers Med., Inc.,* 2005 WL 2172030 at *5 (W.D. Mo. 2005); *In re Teflon Products Liability Litig.,* 254 F.R.D. 354, 360 (S.D. Iowa 2008).
5  Upon information and belief, Mrs. Moss understands that there are Class members residing in at least the following states: Alabama, Arkansas, Colorado, Florida, Indiana, Iowa, Georgia, Kansas, Kentucky, Louisiana, Missouri, Mississippi, Montana, Nebraska, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Wisconsin and Wyoming.

6

with respect to any cause of action, Mrs. Moss respectfully requests that the Court certify subclasses pursuant to Rule 23(c), in addition to the Missouri subclass set forth below.

## B. The Missouri Sub-Class

Mrs. Moss moves for certification of a sub-class of Policyholders defined as follows:

> All past and present Policyholders residing in the State of Missouri, who purchased a Rider from CUL or Commonwealth National Life Insurance Company, and all actual or intended beneficiaries under such Riders residing in Missouri (the "Missouri Subclass").

> Specifically excluded from the class are: (a) federal judges who have presided over this case; (b) persons employed by CUL, and (c) affiliates of CUL.

Mrs. Moss is an individual residing in Missouri who received a payment under a Rider as an actual beneficiary and therefore, is a member of the Missouri Subclass. In addition, Mrs. Moss and the members of the putative Missouri Subclass share the same interests, and their claims and legal theories are identical.

## IV. LEGAL ANALYSIS AND APPLICATION

### A. Rule 23(a) Requirements Are Satisfied

One or more members of a class may sue as representative parties on behalf of all members if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

#### 1. *Numerosity*

The "numerosity" requirement of Rule 23(a)(1) requires the Class to be "so numerous that joining of all members would be impracticable." Rule 23(a)(1). In this case, both the Multi-

7

state Class and Missouri Subclass easily satisfy the "numerosity" requirement. As noted above, all Rider holders are class members. According to CUL's records, in 1998 there were over 3,000 Policyholders in the State of Missouri alone. *See,* Exh. 6 hereto. By CUL's estimate, the class is approximately 9,000 members. Exh. 6.[6] Accordingly, there can be no genuine dispute that Rule 23(a)(1)'s "numerosity" requirement is satisfied.

2.    *Commonality*

The commonality requirement of Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." As the Eighth Circuit Court of Appeals has noted:

> Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when **the legal question 'linking the class members is substantially related to the resolution of the litigation.'**

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)(emphasis added).[7]

In short, Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a "permissive application." 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763, at 221 (3d ed. 2005).[8]

Mrs. Moss has alleged claims that contain questions of law and fact that are common to each Multi-state Class and Missouri Subclass member. In Count I, Mrs. Moss seeks a declaration from the Court regarding the rights, obligations and duties of CUL and all Policyholders pursuant to the terms of the Rider. In Count II, Mrs. Moss alleges that CUL

---

6 Exh. 6 was created by CUL, and limits the policy count information to the time period that CUL believes to be within the applicable statute of limitations. Plaintiff disagrees with CUL's analysis, but resolution of that issue not necessary for purposes of class certification. In the event the Court grants certification under Rule 23(b)(3), Plaintiff believes the issue will require resolution prior to the provision of class notice.

7 C*iting Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir.1982) (accord *Am. Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)).

8 *See also Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982) (commonality may be satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."); *Fielder v. Credit Acceptance Corp.,* 175 F.R.D. at 319-20 (same); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 2003) (the "threshold requirements of commonality ... are not high.");

breached the terms of the Rider. In Count III, Mrs. Moss alleges that CUL breached its duty of good faith and fair dealing. Common questions of law and fact related to all three Counts include:

- whether CUL is properly paying Persistency Bonuses as required by the terms of the Rider;
- whether CUL is properly paying Withdrawal Benefits as required by the terms of the Rider;
- whether Policyholders are entitled to a return of 5% interest on their premiums;
- whether CUL is obligated to compensate Policyholders who did not receive a Persistency Bonus or Withdrawal Benefit in accordance with the Rider's express terms, and
- whether CUL's failure to provide Persistency Bonuses and Withdrawal Benefits was, and is, an unlawful breach of the Rider and a breach of CUL's duty of good faith and fair dealing.

The elements of each of these claims are susceptible to proof on a class-wide basis because the claims all arise from a common form contract and a common pattern and practice by CUL. Mrs. Moss and the Policyholders held the same Rider, with the same contractual terms; CUL breached the Rider in the same way (by refusing to pay the proper amount in Persistency Bonuses and Withdrawal Benefits), and CUL's conduct caused the same type of injury to each Class member. The virtually identical nature of Mrs. Moss' claims to those of the Class members are more than sufficient to satisfy the commonality requirement of Rule 23(a)(2).

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class." Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996).[9] Factual variations in the

---

9 *See also Paxton,* 688 F.2d 552, 562-63 (8th Cir.1982) ("The typicality 'requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal procedure or remedial theory.'"); *DeBoer v. Mellon Mortg. Co.,* 64 F.3d at 1174 (the typicality burden is "easily met so long as other class members have claims similar to the named plaintiff");

individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory. *Id.*

Here, the typicality requirement is met because CUL's conduct that gave rise to Mrs. Moss' claim also gives rise to the Class members' claims; CUL refused to pay the full amount due and owing under the Rider, and it periodically and systematically increased premiums on all Riders. Each Class member purchased an identical Rider, or received payment under an identical Rider. Due to CUL's improper payment of Withdrawal Benefits and Persistency Bonuses under the Riders, Mrs. Moss and the proposed Class members all have similar grievances and each Class members' claim (including those of Mrs. Moss) are based upon the same legal theories and facts. Those same facts and legal theories are more than adequate to satisfy the typicality requirement of Rule 23(a)(3). *Carpe*, 224 F.R.D. 454, 458 (W.D. Mo. 2004).

    *4.*    *Adequacy of Representation*

The "adequacy" requirement of Rule 23(a)(4) looks to whether the class representative and class counsel will "fairly and adequately protect the interests of the class." Rule 23(a)(4). As noted by this Court:

> In order to satisfy this requirement, Plaintiffs must show that: 1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge .... Otherwise stated, <u>adequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class.</u>

---

*Newberg on Class Actions* § 18:9 ("[T]ypicality refers to the nature of the claim or defense, and not to the specific facts from which it arose or the relief sought.").

*Carpe*, 224 F.R.D. at 458 (emphasis added)[10]

### a. Mrs. Moss is adequate

As a general rule, "the named plaintiff must be a member of the class she seeks to represent." *Sample v. Monsanto Co.,* 218 F.R.D. 644, 648 (E.D. Mo. 2003). Here, Mrs. Moss is a member of the Class she seeks to represent. Mrs. Moss and the Class seek the same type of money damages and relief from CUL based on the same theories and the same violations of the law by CUL. Mrs. Moss has an understanding of her claims that are being asserted, has been willing to prosecute this action since it was filed, and is wisely relying upon the expertise of counsel for legal guidance. *Jones v. NovaStar Financial Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009)(citing *Amchem Products v. Windsor,* 521 U.S. 591, 625 (1997): "Class representatives need not have special understanding of the factual or legal issues in their cases."); *Baffa v. Donaldson, Lufkn & Jenrette Sec. Corp.,* 222 F.3d 52, 61-62 (2d Cir. 2000); *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D. Mo. 1999).[11]

### b. Class Counsel is adequate

The undersigned counsel have extensive experience representing plaintiffs in class action litigation. Counsel for the named Plaintiff possess the ability and experience to conduct this class action litigation, and are adequate under Rule 23(a)(4) and 23(g) to be appointed and to serve as Class Counsel.

---

10  Citing *Beckmann v. CBS, Inc.,* 192 F.R.D. 608, 614 (D. Minn. 2000); see also *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002); *Fielde*, 175 F.R.D. 313, 320 (W.D. Mo. 1997); *Paxton*, 688 F.2d 552, 562-563 (8th Cir.1982); 1 Newberg on Class Actions, § 3.22 at 198.

11  Within the past few days, Defendant has requested Moss' deposition. Should Defendant challenge Plaintiff's ability to adequately represent the Class, Plaintiff will supplement the record, if necessary, so as to further evidence her adequacy in her *Reply* brief in support of this Motion.

**B. Rule 23(b)(2) Requirements Are Satisfied**

Rule 23(b)(2) permits an action to be maintained as a class where plaintiffs establish that (1) the complaint seeks relief that is predominately injunctive or declaratory; and (2) the defendant "acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). Under Rule 23(b)(2), it is necessary that final injunctive relief or corresponding declaratory relief be appropriate with respect to the class as a whole. *Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.*, 446 F.2d 763, 768 (8th Cir. 1971); Fed. R. Civ. P. 23(b)(2), Advisory Committee Note ((b)(2) class actions intended where final relief settling the legality of the behavior with respect to the class as a whole is appropriate).

In this case, there can be little question that Rule 23(b)(2) is satisfied. Mrs. Moss has alleged that CUL "acted or refused to act on grounds generally applicable to the class" by failing to pay all amounts due pursuant to the terms of the Rider. CUL's practice at issue (i.e., its interpretation of the Rider in determining the amount of Withdrawal Benefits and Persistency Bonuses owed) has been applied "in a consistent manner" and as "part of a pattern of activity." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* ("Wright & Miller") § 1775 at 449 (3d ed. 2009). Courts have consistently held that such a wide-spread pattern or practice satisfies the (b)(2) requirement for actions "on grounds generally applicable to the class."[12]

Mrs. Moss seeks a declaration that this practice is improper and constitutes a breach of the material terms of the Rider. Such a declaration is equally applicable to all Policyholders, past

---

12 *See, e.g.*, *Gelb v. AT&T*, 150 F.R.D. 76, 77 (S.D.N.Y. 1993) (certifying a Rule 23(b)(2) class and stating that, "[b]y its nature, the alleged market fraud in advertising would have been intended to affect the similarly situated cardholders and is part of a pattern of activity directed not at one particular individual, but at the universe of cardholders.").

and present, and beneficiaries.[13]  For past Policyholders and actual beneficiaries (i.e., people that have received a beneficiary payment under a Rider), this declaration will provide the foundation for them to recover from CUL the difference between what they were paid under the Rider, and what they should have been paid.  For present Policyholders (who, by definition, have not yet received a Withdrawal Benefit or Persistency Bonus payment) and intended beneficiaries (people that are named beneficiaries under a Rider but have not yet received a payment), a declaration will prevent CUL from paying them less than the full amount owed for Withdrawal Benefits or Persistency Bonuses.

To the extent CUL argues that Mrs. Moss' request for money damages and certification under Rule 23(b)(3) precludes certification under Rule 23(b)(2), its argument should be disregarded *in toto*.  While Mrs. Moss certainly seeks monetary damages, her request for actual damages does not warrant denial of class certification under Rule 23(b)(2).  Courts routinely certify actions under Rule 23(b)(2) when, as here, the action is *primarily* for equitable relief rather than monetary damages.[14]  The Eighth Circuit has cited with approval Wright & Miller's statement that "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (citing 7A Wright & A. Miller, *Federal Practice and Procedure* § 1775 at 470).  The Western District has also

---

13 The federal Declaratory Judgment Act specifically states that a district court's declaratory judgment provides a foundation for further legal action.  *See* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.").

14  *See, e.g.*, *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)(rejecting defendants' arguments that the mere presence of massive damage claims precluded Rule 23(b)(2) certification and noting that "In the event Plaintiffs are able to prove the existence and effect of the alleged conspiracy, the requested declaratory and injunctive relief will be necessary to ensure that Nasdaq investors are not harmed in the future by Defendants' anticompetitive conduct."); *In re Universal Service Fund Telephone Billing Practices Litig.*, 02-MD-1468-JWL, 219 F.R.D. 661 (D. Kan. 2004)(certifying a (b)(2) class, noting "Plaintiffs damages…total…$2,711,400,000 on plaintiffs' price fixing claims…", Final Pretrial Order, D.E. 822).

13

approved classes under Rule 23(b)(2) seeking both declaratory and injunctive relief for breach of contract stating:

> Requests for monetary relief, as the plaintiffs have sought in this case, are not enough to cause a Court to refuse to certify a class action under Rule 23(b)(2). Monetary damages are almost always requested when injunctive relief is sought. Refusing to certify a Rule 23(b)(2) class action based on a request for monetary relief defeats the possibility of ever maintaining an injunctive class action. Such a nonsensical reading of the federal rules does not make good law and is flatly rejected by this Court.

*Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D. Mo. 1999).

This lawsuit is about CUL's errant interpretation of the Rider that results in CUL's underpayment of Persistency Bonuses and Withdrawal Benefits, and Mrs. Moss' attempt to force CUL to change its practices. Declaratory relief is **necessary** to ensure that CUL will not continue to pay Policyholders or intended beneficiaries less than the full amount due under the Rider. The fact that certification of a money damages class under Rule 23(b)(3) is also appropriate does not foreclose application of the provisions of Rule 23(b)(2).[15]

### C. The Requirements of Rule 23(b)(3) Are Satisfied

Certification of a class pursuant to Rule 23(b)(3) is warranted when questions of law or fact common to class members predominate over any questions affecting only individual members, and when a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

#### *1. Predominance*

Where an issue is central to the case and its resolution will resolve the issue for all Class members – such as the propriety of CUL's interpretation of the Rider – then class litigation will be appropriate. *Carpe*, 224 F.R.D. at 458 (quoting *3B Moore's Federal Practice* ¶ 23.45[2] at

---

[15] See, *In re Catfish Antitrust Litig.*, 826 F. Supp. at 1046 (certifying a class under both Rule 23b(2) and (b)(3), noting that "trends in Rule 23(b)(2) utilization appear to favor a broader application of equitable relief certification" even where damages are also sought); *Universal Service Fund*, 219 F.R.D. 661 (D.Kan. 2004).

23-306 to 23-307 (2d ed. 1995), "In sum, 'the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance.'").[16]

Predominance may be found where "there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication."[17] In applying this element of Rule 23(b)(3), the Eighth Circuit has noted:

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. **If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.**

*Blades,* 400 F.3d 562, 566 (8th Cir. 2005) (emphasis added).[18]

In this case, common questions clearly predominate over any individual questions because the same evidence will suffice for each member to make a prima facie showing. *Blades*, 400 F.3d at 566.

### a. Breach of Contract

Mrs. Moss and each past Policyholder and actual beneficiary can establish CUL's breach of the Policy using uniform evidence because the relative rights and responsibilities of the parties flow from a standard contract (the Rider), which CUL interprets in a uniform manner. Exh. 4,

---

16  *See also Newberg on Class Actions* § 4:25 at 172 ("A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."); *Gen. Tel. Co. of Swift. v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 2369 (1982) (a class action is appropriate when it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."); *Advisory Committee Notes* to 1996 Amendment (Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons  similarly situated, without sacrificing procedural fairness or bringing about other undesirable results).

17  *See also* 7 Wright & A. Miller, *Federal Practice and Procedure* § 1778 at 528 (2d ed. 1986).

18 Although there is no definitive test for determining whether common issues predominate, "in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 359 (D.D.C. 2007) (internal quotations and citations omitted).

15

pgs. 105-107. The Withdrawal Benefit terms of the Riders are the same;[19] the Persistency Bonus terms of the Riders are the same; CUL interpreted and applied the terms of the Rider in a uniform (and incorrect) manner using the same accounting methodology (Exh. 4, pgs. 105-107), and breach of the Riders uniformly occurred by CUL failing to pay the correct amount for Persistency Bonuses and Withdrawal Benefits. Certainly, this uniformity establishes the predominance element of Rule 23(b)(3) with respect to Mrs. Moss' breach of contract claim.

Furthermore, there is no variance in the applicable state laws that would render class certification inappropriate with respect to breach of contract. Numerous courts have adjudicated this issue and determined that nationwide class actions are appropriate when breach of contract principles are involved.[20] As these authorities note, class adjudication of a breach of contract claim does not involve complex issues of varying multi-state law, and are easily maintained.[21]

### b. Breach of the Duty of Good Faith

Mrs. Moss' claim for breach of the duty of good faith and fair dealing is similarly proven by class-wide evidence, thus obviating the need for individual analysis. Every contract includes an implied covenant of good faith and fair dealing. *Farmers' Electric Cooperative, Inc. v.*

---

19 Even if the Riders varied slightly, certification would still be proper. *See, e.g.*, *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (noting variance in contractual terms among class members' contracts is not a sufficient distinction that should defeat certification); *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993) (same).

20 *See, e.g.*, *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) (certifying a national class in an action concerning construction of an insurance policy, holding that certification was appropriate because "the general policies underlying common-law rules of contract interpretation tend to be uniform"); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (holding that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 694 (M.D. Ga. 1996) (determining that "[t]he application of various state laws would not be a bar [to class certification] where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."); *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D. Pa. 1994) (citing notion that most state courts follow "virtually universal principles of insurance contract interpretation").

21 Given the uniform applicability of contract law, a survey of the elements of an action for breach of contract from the states involved in the Multi-state class is not necessary. However, in the unlikely event Defendant argues that such a variance exists, Plaintiff reserves the right to supplement this Motion, or present with her Reply brief a survey demonstrating the uniformity in such law.

*Missouri Dept. of Corr.,* 977 S.W.2d 266, 271 (Mo. banc 1998). This claim involves the following questions that are susceptible to common proof: (1) was there an agreement, express or implied, between Class members and CUL?; (2) did CUL breach the duty of good faith inherent in such agreement in its payment of Withdrawal Benefits and Persistency Bonuses?; and (3) were Class members damaged as a result of CUL's conduct? Although not exhaustive, these simple questions demonstrate the common nature of the evidence Mrs. Moss will seek to introduce in order to prove this claim on a class-wide basis and establish both liability and damages.

c. Declaratory Judgment

Certainly, this claim is susceptible to common proof. Mrs. Moss seeks a declaration, pursuant to 28 U.S.C. 2201, *et seq.*, of the rights, responsibilities and obligations of CUL with respect to the terms of the Rider (terms that are uniform and the same for each Class member). Mrs. Moss requests that the Court declare as follows:[22]

- For all Policyholders entitled to a Withdrawal Benefit under the terms of the Rider, CUL is obligated to pay Policyholders the sum specifically set forth in the Persistency Bonus and Withdrawal Cash Value Table in the particular Policyholder's particular policy year, for every dollar of premiums paid;

- For all Policyholders who have previously received a Bonus or Withdrawal Benefit from CUL pursuant to a Rider, CUL is obligated to provide such Policyholders with the amount such Policyholders should have received in accordance with subparagraphs (a) and (b) above, including interest at the statutory rate from the day such Policyholders were paid by CUL to the date upon which CUL provides the additional amounts described in this subparagraph; and

- CUL's failure to provide Bonuses and Withdrawal Benefits in the manner contemplated by subparagraphs (a) and (b) above was, and is, unlawful, a breach of the Rider and a breach of CUL's duty of good faith and fair dealing.

---

22 The specific relief sought is set forth in Mrs. Moss' Complaint, DE 1.

These declarations are all dependent on interpretation of the same Rider. Thus, predominance is present with respect to certification of Mrs. Moss' claim for declaratory judgment.

### d. Individual Damage Issue Do Not Predominate

The predominance requirement is also satisfied with respect to the Class members' damages. Mrs. Moss has retained a well known Kansas City area economist who will testify at trial[23] that Mrs. Moss and the Class members have economically meaningful damage claims based on a reasonable economic theory and that class wide damages can be calculated in an economically reasonable manner, supported by accurate and reliable statistical information. Such expert's opinion and damage quantification methodology utilizes information in CUL's possession and does not depend on individualized proof regarding the amount of each class member's claim.[24] At the most basic level, Mrs. Moss' expert's analysis simply sums the difference between what Class members were paid under CUL's skewed interpretation of the Rider, and what they should have been paid under a correct application of the Rider.

Such a formulaic damage model does not raise superiority concerns, since mere formulaic differences among the Class members' damages have no bearing on the superiority question and do not defeat certification. *See, e.g.*, *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993).

---

23 Mrs. Moss' expert designations are not due until October 2, 2009. *See* Amended Scheduling Order (DE 19), pg. 2. However, should the Court require submission of Mrs. Moss' expert report for purposes of considering class certification, Mrs. Moss will promptly submit the same.

24 Mrs. Moss contends that a plausible damage methodology exists by which she will prove damages on a class-wide basis. As another Court has determined when considering, and accepting, a similar contention by a plaintiff moving for class certification, "whether damages actually will be proven on a class-wide basis remains to be seen . . . [N]evertheless, the fact that individual proof as to the amount of damages may be necessary does not preclude class certification." *See In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 615 (D. Kan.1995)(Vratil, J.); *see also Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 42 (S.D.N.Y.1990); *In re Wirebound Boxes,* 128 F.R.D. at 272; *Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 579 (D. Pa. 1984).

Simply put, Mrs. Moss contends that a viable damage methodology exists. Whether CUL agrees with Mrs. Moss is of no moment.[25]

2. _Superiority_

The second prong of a Rule 23(b)(3) certification analysis is the question of whether a class action is the superior method of resolving the claims at issue. The matters pertinent to this analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The superiority determination requires a consideration of the efficiency, expense and manageability of a class action in comparison to other possible methods for adjudication of the dispute. _Brown v. Cameron-Brown Co._, 92 F.R.D. at 49; 1 _Newberg_, § 4.32 at 4-129. Alternative procedures may include joinder, intervention, consolidation, and separate individual actions. _In re Tetracycline Cases_, 107 F.R.D. 719, 732 (W.D. Mo. 1985); _Brown_, 92 F.R.D. at 50.

a. Class Members' Interests

Given the uniformity of the claims held by the Class members, and the relief sought by Mrs. Moss herein, Mrs. Moss suggests that the interests of the Class members are materially advanced by certification of this case, rather than by forcing each Class member to individually resolve their claim. Moreover, because CUL has not notified Class members about its formulaic

---

25 _See In re Visa Check/MasterMoney Antitrust Litig._, 280 F.3d at 135; _see also In re Linerboard_, 305 F.3d at 152 (Plaintiffs need only make a "threshold showing" related to damage methodology and impact); _In re Bulk (Extruded) Graphite Prods. Antitrust Litig._, 2006 WL 891362, at *10 (D.N.J. 2006)(same); _In re Dynamic Random Access Memory (DRAM) Antitrust Litig._, 2006 WL 1530166, at *9 (N.D. Cal. 2006) (Plaintiffs need only advance a "plausible methodology" to demonstrate that damages can be proven on a class-wide basis).

error in its Withdrawal Benefit and Persistency Bonus payment methodology (Exh. 4, pgs. 108-109), past Policyholders probably do not even know that they were injured and present Policyholders do not yet know that they will be injured by CUL's conduct. A class action is therefore superior to other modes of adjudication because "it would increase the public's awareness of the suit and thereby increase the number of individuals able to vindicate their rights." *Norflet v. John Hancock Life Ins. Co.,* 2007 WL 2668936 at *10 (D. Conn. 2007); *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (superiority requirements met because "without class notification, most putative class members will not even know that they suffered a violation of their constitutional rights").

### b. Extent of Other Litigation

Mrs. Moss is only aware of one other pending class action against CUL regarding these same claims. On April 7, 2009, a copycat lawsuit was filed in the Circuit Court of Fayette County, Tennessee by plaintiffs Guy Coady and Lloyd Doan (a copy of which is attached hereto as Exh. 7). Most of the factual allegations set forth in the *Coady* complaint are, literally, copied from the complaint filed by Mrs. Moss in February, 2009 (and by Kent Freeman in his preceding action filed in 2008 that was dismissed after he entered into a personal settlement with CUL). The presence of the *Coady* action does not weigh against certification of Mrs. Moss' claims. If anything, the opposite is true. The existence of the *Coady* action further demonstrates that CUL's wrongful conduct is uniform and is occurring to Policyholders across the country.

### c. Concentration of Litigation

Concentrating the litigation of Mrs. Moss' claims in this Court is desirable insofar as it "simplifies and streamlines the litigation process." *Nassau County*, 461 F.3d at 230. A class action will save an enormous amount in litigation costs for all parties and allow them to more

efficiently prosecute their claims and defenses. *See Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 47 (E.D. N.Y. 2008).

Here, class treatment is a far superior method of adjudicating thousands of claims when compared to maintenance of thousands of individual lawsuits in federal courts, or thousands of individual joinders in this case. Clearly, joinder and intervention are not plausible alternatives given the number and geographic dispersion of the Policyholders. Furthermore, no advantages would be gained by requiring the filing of individual actions by the absent class members. Certification would, therefore, provide the superior method for adjudication of the claims of all Policyholders.

d. Manageability

With respect to the "manageability" factor of the superiority analysis, manageability "should be considered only in relation to alternative means of adjudication," *Brown,* 92 F.R.D. at 49, and denial of class certification for management reasons "is never favored." *In re Workers' Compensation*, 130 F.R.D. 99, 119 (D. Minn. 1990).[26]

Mrs. Moss does not believe there will be any material difficulties encountered in managing this action as a class action. As noted above, most of the elements of Mrs. Moss' claims – including issues of damages – can be established through CUL's own documents and expert testimony. The undeniable fact that the Class may be relatively large does not militate against a finding of manageability since the same procedural processes (in terms of opt out requirements, notice, etc.) will apply, regardless of whether the class is 100 members or 10,000 members. If anything, a relatively large class only increases the efficiency of the case. *See, e.g.*, *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004), *cert. denied,* 543 U.S. 1051

---

26   "[O]nly where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class, can difficulties in management support denial of class certification ...." *Brown*, 92 F.R.D. at 49 (quoting 3B Moore's *Federal Practice* § 23.45 [4.-4] (2d ed. 1980).

(2005) ( "The more claimants there are, the more likely a class action is to yield substantial

economies in litigation.").  Simply put, a denial of class certification based on lack of

manageability "should be the exception rather than the rule."  *In re Visa Check/MasterMoney

Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).[27]

## V.    CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the

best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Rule 23(c)(2)(B).  It is Mrs. Moss'

understanding that CUL has contact information for all current Policyholders, and historic

contact information for all former Policyholders.  Accordingly, if the Court certifies this case as

a class action under Rule 23(b)(3), Mrs. Moss proposes that direct mail notice be provided to

each of the Class members using their last known address (and addresses updated using third-

party services) consistent with procedures in other class actions.[28]  Mrs. Moss will seek the

Court's specific approval of her proposed Class Notice and Notice Plan following certification.

## VI.    APPOINTMENT OF CLASS COUNSEL

Mrs. Moss respectfully requests that the Court appoint the undersigned four attorneys

from two law firms as counsel for the Class.  The undersigned have the requisite experience,

---

[27]  Furthermore, to the extent the Court finds that individualized damage issues are problematic to class
certification, Plaintiff requests that this Court utilize its broad discretionary authority under Rule 23 to craft a plan
that resolves any manageability concerns.  It is well-recognized that Rule 23(c) empowers a Court with authority to
certify claims or issues in whole or part in order to carry out the remedial nature of Rule 23.  *See* Rule 23(c)(1)(B);
23(c)(4); 23(c)(5).  To the extent consideration of such remedies becomes necessary, possible Rule 23(c) remedies
include bifurcation of liability and damage issues, partial certification, or the further use of subclasses.
[28]   Such direct mail notice satisfies the requirements of Rule 23 and due process concerns. *See Eisen v. Carlisle
and Jacquelin*, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and
addresses may be ascertained through reasonable effort").

22

qualities and resources to serve as Class Counsel, are well-versed in the legal principles and facts governing these claims and will commit all necessary resources towards representing the Class.[29]

## VII.    CONCLUSION

Mrs. Moss' claims satisfy the requirements of Rule 23(a), 23(b)(2) and 23(b)(3).  Class action treatment of this case will provide a fair, efficient and superior procedure in which to resolve the claims of the thousands of absent class members who, like Mrs. Moss, have been affected by CUL's wrongful conduct.  Mrs. Moss respectfully suggests that class certification is warranted and requests that the instant Motion be granted.

## VIII.   REQUEST FOR ORAL ARGUMENT

Mrs. Moss respectfully requests oral argument on her Motion to Certify.

---

[29]  In light of the qualifications and experience of the undersigned counsel and law firms (some of whom this Court has previously found to be adequate class counsel), Moss does not anticipate a dispute from CUL regarding this request.  However, in the event such an argument is asserted by CUL, Moss reserves the right to supplement this Motion, or set forth in her Reply brief, the details regarding the qualifications and experience of the proposed Class Counsel.  Alternatively, should the Court request declarations from proposed Class Counsel regarding their qualifications, they will be submitted promptly.

Dated: July 15, 2009.                    Respectfully Submitted,

                                         Michael K. Cully          MO Bar No. 26794
                                         Angela K. Drake           MO Bar No. 35237
                                         LOWTHER JOHNSON, LLC
                                         901 St. Louis, 20th Floor
                                         Springfield, Missouri  65806
                                         (417) 866-7777
                                         Fax # (417) 866-1752


                                         ____*/s/ Joseph A. Kronawitter*_____
                                         Robert A. Horn            MO Bar No. 28176
                                         Joseph A. Kronawitter     MO Bar No. 49280
                                         HORN AYLWARD & BANDY, LLC
                                         2600 Grand Boulevard, Suite 1100
                                         Kansas City, Missouri  64108
                                         (816) 421-0700
                                         Fax # (816) 421-0899

                                         **ATTORNEYS FOR PLAINTIFF MARY MOSS**


                              **<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that on the 15th day of July, 2009, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system which sent notification of such filing to all
attorneys registered for ECF filing as of that date.

                                         ____*/s/ Joseph A. Kronawitter*_____
                                         Attorneys for Plaintiffs