IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MARY E. MOSS, on behalf of herself and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 09-4030-CV-C-NKL |
| CENTRAL UNITED LIFE INSURANCE COMPANY, | ) ) ) | JURY TRIAL REQUESTED |
| Defendant. | ) ) | |

## AMENDED COMPLAINT

COMES NOW Plaintiff Mary E. Moss, by and through the undersigned counsel, on her own behalf and as a representative of a class of persons similarly situated, and for her causes of action against Defendant Central United Life Insurance Company, states and alleges as follows:

## PARTIES

1. Plaintiff Mary Moss ("Mrs. Moss") is a resident of the State of Missouri currently residing at 1522 S. Sieger, Springfield, Missouri 65804.

2. Defendant Central United Life Insurance Company ("CUL") is, and at all times herein referenced was, an insurance company organized and existing under the laws of the State of Arkansas, registered to transact business in the State of Missouri and in good standing and transacting substantial business in the State of Missouri.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332 (2005) because:

    a. This is a civil action filed pursuant to Fed.R.Civ.P 23 brought by one or more representative persons as a class action;

1

b.  The amount in controversy of all class members in the aggregate is believed to exceed the sum or value of $5,000,000.00, exclusive of interest and costs;

c.  Plaintiff, and certain members of the putative class, are citizens of Missouri, which is not the State of the Defendant's domicile or citizenship.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because CUL resides in this District and/or is subject to personal jurisdiction in this District.

5. Intra-District, or Divisional, venue is proper in the Central Division because CUL is available for service of process, and has residence in, Jefferson City, Missouri located in the Central Division of this Court.

## FACTUAL ALLEGATIONS AS TO ALL CLAIMS

6. All of the factual allegations set forth below are made upon information and belief, unless otherwise noted.

7. This class action arises from CUL's continuing breach of thousands of insurance policy riders.

8. From 1986 to 1997, Commonwealth National Life Insurance Company ("Commonwealth") sold thousands of insurance policy return-of-premium riders, generally known within the industry as "ROP riders".

9. These riders, along with ROP riders sold by CUL, bore several names including: "Persistency Bonus and Withdrawal Benefit Riders", Persistency Bonus and Premium Refund Riders, Cash Value and Withdrawal Benefit Riders, Return of Premium Riders or Twenty Year Return of Premium Riders (hereinafter collectively referred to as the "Riders").

2

10. All of these Riders have the same form number (PB-215-86), and are identical in their material terms.

11. The Riders were drafted and prepared by CUL, or its predecessors-in-interest.

12. The Rider was offered to individuals who purchased insurance policies, including cancer benefit health insurance policies (hereinafter referred to as "Policyholders").

13. Policyholders paid an additional monthly premium for the Rider, separate and apart from the premium paid for the underlying insurance policy.

14. The amount of premium paid for the Rider was determined at the Rider's inception and was adjusted thereafter by CUL.

15. According to the explicit terms of the Rider, a Policyholder was eligible to receive two benefits in exchange for paying the Rider Premium: a Persistency Bonus, and an early Withdrawal Benefit.

16. The Rider provides the following explanation regarding how Withdrawal Benefits and Persistency Bonuses are paid:

> **PERSISTENCY BONUS AND WITHDRAWAL BENEFITS**
>
> This provision applies to the person named as the insured on the effective date of the policy and includes the premiums and claims paid on all persons insured under the policy while this rider is in force. After the policy has been continuously in force on the life of such person for twenty (20) years, we will pay a one time Persistency Bonus Benefit. The value of the benefit will be 100% of the premiums paid on an annual basis less any claims paid. We will pay a Withdrawal Benefit: (a) if the named insured surrenders this policy after the sixth policy year but before the end of the 20th policy year; or (b) when we receive due proof that the named insured died prior to the payment of the Persistency Bonus Benefit; whichever is first to occur. The Withdrawal Benefit will be an amount equal to the Cash Value as of the date of surrender or death, less any claims paid. The Cash Value accumulation to the end of each policy year, without regard to any claim payments, is shown in the Persistency Bonus and Withdrawal Cash Value Table below. The values set forth in the Table assume that premiums have been paid for the full policy year and will be adjusted for any partial year payment. Any payment of the Withdrawal Benefit or the Persistency Bonus Benefit terminates this rider. This rider will also terminate when the amount of claims paid under the policy exceeds the value of the premiums paid and due over the 20 year period for which this rider was issued. The premium for this rider shall be discontinued on the date this rider terminates for any reason.

*See,* Rider of Plaintiff Mary Moss, attached hereto as Exhibit 1.

17. Pursuant to the terms of the Rider, if a Policyholder submitted health care claims under the insurance policy attendant to their Rider, any Persistency Bonuses or Withdrawal Benefits ultimately paid would be reduced by the amount of health care claims paid.

18. The Rider also states that if the amount of such health care claims exceeds the total anticipated amount of Rider premiums to be paid over the twenty year life of the Rider, the Rider would be cancelled with no benefit payment.

19. The Rider includes the following table ("Table") that explains how a Persistency Bonus or Withdrawal Benefit is calculated:

**PERSISTENCY BONUS AND WITHDRAWAL CASH VALUE TABLES**

This Table is based on each $1.00 of premium, on an annual basis. The values are applicable only at the ends of the policy years shown. During any policy year the amount of Cash Value will be calculated with due allowance for interest at 5% and payment of any fractional premiums. The amount of the Cash Value derived from the following Table will be reduced by the amount of any claims paid prior to the date of an event which results in any payment under this provision.

| Policy Year End | Cash Value | Policy Year End | Cash Value |
|---|---|---|---|
| 1 | $ 0 | 11 | $ 6.31 |
| 2 | 0 | 12 | 7.55 |
| 3 | 0 | 13 | 8.86 |
| 4 | 0 | 14 | 10.22 |
| 5 | 0 | 15 | 11.66 |
| 6 | .93 | 16 | 13.17 |
| 7 | 1.91 | 17 | 14.76 |
| 8 | 2.93 | 18 | 16.42 |
| 9 | 4.00 | 19 | 18.17 |
| 10 | 5.13 | 20 | 20.00 |

Exh. 1, pg. 2.

20. Thus, according to the unambiguous terms of the Rider, a Policyholder who held the Rider for 20 years would receive a Bonus of twenty dollars ($20) "based on each $1.00 of premium" paid. Per the Table, a Policyholder who surrendered the Rider between six and twenty years after its inception would receive a Withdrawal Benefit as determined by the Table.

21. With respect to calculation of the "cash value" amount referenced in the Table, the Rider states:

4

> **CASH VALUES**
>
> The Cash Value shown in the Table below (at the end of any policy year) is determined on a five year preliminary term basis with an interest only accumulation at the rate of 5% a year compounded annually.

Exh. 1, pg. 1.

22. Thus, after a five year introductory period, the Cash Value of a Rider would accumulate 5% interest annually.

23. With respect to the Persistency Bonus feature of the Rider, the language of the Rider and its natural and reasonable interpretation is that the premiums paid by a Policyholder will be returned pursuant to the terms of the "Persistency Bonus and Withdrawal Cash Value Table" ("Table") on page two (2) of the Rider after the expiration of twenty (20) years.

24. Thus, pursuant to the terms of the Rider, if a Policyholder maintains the underlying insurance policy (and Rider) continuously in force for the twenty (20) year term, the Policyholder is entitled to a one-time Bonus equivalent to the specific cash value amount as determined by the terms of the Table, including accrued interest.

25. Over the life of the Rider, CUL dramatically increased premiums on all Riders. For instance, in the State of Missouri, CUL implemented very substantial Rider premium increases six times within five years. For some Policyholders, this amounted to as much as a 4,000% increase over the life of the Rider.

26. The Rider has stayed the same from its inception in 1986 to the present.

27. The Rider has been applied to every Policyholder in the same manner.

28. In terms of determining how Persistency Bonus and Withdrawal Benefit payments were calculated, CUL has interpreted and applied the Rider the same with respect to every Policyholder.

29. To date, CUL has not considered notifying Policyholders about the manner in which CUL interprets the Rider, or determines Persistency Bonus or Withdrawal Benefit payments.

30. Upon information and belief, CUL has refused to pay Policyholders, like Plaintiff, the full amount due and owing for Bonuses and Withdrawal Benefits pursuant to the Rider.

31. Upon information and belief, CUL will continue to pay Policyholders less than the full amount due and owing for Bonuses and Withdrawal Benefits pursuant to the Rider.

32. In 1991, Mrs. Moss and her husband, Ben, purchased a cancer treatment policy and Rider.

33. After Ben Moss passed away in 2001, CUL paid Mrs. Moss a benefit under the Rider that was less than what CUL was supposed to pay under the terms of the Rider, as set forth above.

## MULTI-STATE CLASS ALLEGATIONS

34. Unless otherwise specifically stated herein, and pursuant to Fed.R.Civ.P. 23, this action is instituted by Mrs. Moss on behalf of herself and a multi-state class of Policyholders defined as follows:

> All past and present Policyholders throughout the United States who purchased a Rider from CUL or Commonwealth National Life Insurance Company, and all actual or intended beneficiaries under such Riders (the "Multi-state Class").[1]
>
> Specifically excluded from the class are: (a) federal judges who have presided over this case; (b) persons employed by CUL, and (c) affiliates of CUL.

---

[1] Through discovery, Mrs. Moss has learned that there are several Riders that fall within this definition, as noted in paragraph 9 above. However, Mrs. Moss is not limiting her claims to these particular Rider names and, by this reference, specifically incorporates all ROP riders sold by CUL or its predecessors-in-interest that do not contain a table that sets forth a specific percentage-of-premium amount to be paid for Bonuses or Withdrawal Benefits.

35. Mrs. Moss is an individual who received a payment under a Rider as an actual beneficiary and therefore, is a member of the Multi-state Class. In addition, Mrs. Moss and the members of the putative Multi-state Class share the same interests, and their claims and legal theories are identical.

36. The Class includes thousands of members residing throughout the United States, and therefore the class is so numerous that joinder of all members of the class would be impractical.[2]

37. The claim for relief asserted herein, on behalf of the Plaintiff and the putative class members, present questions of law and fact common to the class, including:

    a. Whether CUL breached the terms of the Rider by paying less than the full amount due and owing to Policyholders for Bonuses;

    b. Whether CUL breached the terms of the Rider by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits;

    c. Whether CUL breached its duty of good faith and fair dealing by paying less than the full amount due and owing to Policyholders for Bonuses pursuant to the Rider;

    d. Whether CUL breached its duty of good faith and fair dealing by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits pursuant to the Rider;

    e. Whether CUL breached its duty of good faith and fair dealing by misrepresenting the benefits payable for Bonuses pursuant to the Rider;

---

[2] Upon information and belief, Mrs. Moss understands that there are Class members residing in at least the following states: Alabama, Arkansas, Colorado, Florida, Indiana, Iowa, Georgia, Kansas, Kentucky, Louisiana, Missouri, Mississippi, Montana, Nebraska, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Wisconsin and Wyoming.

f. Whether CUL breached its duty of good faith and fair dealing by increasing Policy premiums in order to increase the lapse rate of Policies, thereby avoiding its obligations for payment of the Withdrawal Benefits and Persistency Bonus pursuant to the Rider;

g. Whether CUL breached its duty of good faith and fair dealing by misrepresenting the benefits payable for Withdrawal Benefits pursuant to the Rider;

h. Whether CUL has acted, or refused to act, on grounds that apply generally to the putative class;

i. Whether injunctive relief or corresponding declaratory relief is appropriate;

j. Whether CUL's conduct was intentional and willful.

38. The claims of the named representative Plaintiff are typical of the claims of the putative class in that:

a. The Plaintiff and the putative class members entered into the exact same standard, written form Rider, which contained the exact same terms and conditions, which were prepared solely by CUL;

b. CUL has acted uniformly to all Policyholders, including Plaintiff, in the payment of amounts owing under the Rider, and administration of the Rider; and

c. Based on these common facts, the putative class members have the same claims as those asserted by Plaintiff in this case.

39. The Plaintiff, as the representative Plaintiff for the putative class, will fairly and adequately protect the interests of the putative class because:

   a. The Plaintiff is knowledgeable regarding the facts and circumstances that give rise to her claims, and the claims of the putative class members;

   b. The Plaintiff is strongly interested and highly motivated to assert and protect her own rights and the rights of the putative class in a vigorous fashion; and

   c. The Plaintiff has retained as class counsel two law firms with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources. These law firms will also vigorously assert and protect the interests of the putative class members.

40. The questions of law and/or fact common to the Plaintiff and the putative class members predominate over any questions affecting only individual members of the class, and a class action, as asserted herein, is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

   a. The interests of the Plaintiff and the interests of individual class members in controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action; individual actions would not be practical considering the anticipated cost of litigating in federal court against a large insurance company in comparison to the relatively modest amount of each individual class member's claim;

      b.      Upon information and belief, there are no pending, certified class actions concerning the controversy at issue initiated on behalf of the putative class members;

      c.      Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the locations of the Plaintiff, CUL, the putative class members, the fact that CUL does substantial business in this jurisdiction, and the availability of witnesses and evidence; and

      d.      Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of the Plaintiff and the putative class members.

41.      Upon information and belief, there is no unmanageable variance in the laws of the different States involved in this litigation that prevent application of simple contract law to the claims of the putative class, and there is no variance in State laws that render the claims of the class members "uncommon" or "atypical" for purposes of Fed.R.Civ.P. 23.

42.      In addition, CUL has acted, or refused to act, on grounds that apply generally to the putative class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## MISSOURI SUB-CLASS ALLEGATIONS

43. Pursuant to Fed.R.Civ.P. 23, Mrs. Moss also brings this action on behalf of herself and a subclass of Policyholders defined as follows:

> All past and present Policyholders residing in the State of Missouri, who purchased a Rider from CUL or Commonwealth National Life Insurance Company, and all actual or intended beneficiaries under such Riders residing in Missouri (the "Missouri Subclass").
>
> Specifically excluded from the class are: (a) federal judges who have presided over this case; (b) persons employed by CUL, and (c) affiliates of CUL.

44. Mrs. Moss is an individual residing in Missouri who received a payment under a Rider as an actual beneficiary and therefore, is a member of the Missouri Subclass. In addition, Mrs. Moss and the members of the putative Missouri Subclass share the same interests, and their claims and legal theories are identical.

45. The subclass referenced above includes thousands of members residing throughout the State of Missouri, and therefore the subclass is so numerous that joinder of all members of the class would be impractical.

46. The claim for relief asserted herein, on behalf of the Plaintiff and the putative subclass members, present questions of law and fact common to the class, including:

   a. Whether CUL breached the terms of the Rider by paying less than the full amount due and owing to Policyholders for Bonuses;

   b. Whether CUL breached the terms of the Rider by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits;

   c. Whether CUL breached its duty of good faith and fair dealing by paying less than the full amount due and owing to Policyholders for Bonuses pursuant to the Rider;

d. Whether CUL breached its duty of good faith and fair dealing by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits pursuant to the Rider;

e. Whether CUL breached its duty of good faith and fair dealing by misrepresenting the benefits payable for Bonuses pursuant to the Rider;

f. Whether CUL breached its duty of good faith and fair dealing by increasing Policy premiums in order to increase the lapse rate of Policies, thereby avoiding its obligations for payment of the Withdrawal Benefits and Persistency Bonus pursuant to the Rider;

g. Whether CUL breached its duty of good faith and fair dealing by misrepresenting the benefits payable for Withdrawal Benefits pursuant to the Rider;

h. Whether CUL has acted, or refused to act, on grounds that apply generally to the putative subclass;

i. Whether injunctive relief or corresponding declaratory relief is appropriate;

j. Whether CUL's conduct was intentional and willful.

47. The claims of the named representative Plaintiff are typical of the claims of the putative subclass in that:

a. The Plaintiff and the putative subclass members entered into the exact same standard, written form Rider, which contained the exact same terms and conditions, which were prepared solely by CUL;

b. CUL has acted uniformly to all Policyholders, including Plaintiff, in the payment of amounts owing under the Rider, and administration of the Rider; and

c. Based on these common facts, the putative subclass members have the same claims as those asserted by Plaintiff in this case.

48. The Plaintiff, as the representative Plaintiff for the putative subclass, will fairly and adequately protect the interests of the putative subclass because:

a. The Plaintiff is knowledgeable regarding the facts and circumstances that give rise to her claims, and the claims of the putative subclass members;

b. The Plaintiff is strongly interested and highly motivated to assert and protect her own rights and the rights of the putative subclass in a vigorous fashion; and

c. The Plaintiff has retained as class counsel two law firms with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources. These law firms will also vigorously assert and protect the interests of the putative subclass members.

49. The questions of law and/or fact common to the Plaintiff and the putative subclass members predominate over any questions affecting only individual members of the subclass, and a class action, as asserted herein, is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

a. The interests of the Plaintiff and the interests of individual subclass members in controlling the prosecution of separate actions are outweighed

by the advantages of adjudicating the common issues of fact and law by means of a class action; individual actions would not be practical considering the anticipated cost of litigating in federal court against a large insurance company in comparison to the relatively modest amount of each individual class member's claim;

b. Upon information and belief, there are no pending, certified class actions concerning the controversy at issue initiated on behalf of the putative class members;

c. Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the locations of the Plaintiff, CUL, the putative subclass members, the fact that CUL does substantial business in this jurisdiction, and the availability of witnesses and evidence; and

d. Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of the Plaintiff and the putative class members.

50. In addition, CUL has acted, or refused to act, on grounds that apply generally to the putative subclass so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I
## DECLARATORY JUDGMENT

COMES NOW Plaintiff Mary Moss and for Count I of this Complaint, states and alleges as follows:

51. To the extent they are not inconsistent, Plaintiff incorporates by reference the allegations set forth above in this Complaint as if more fully set forth herein.

52. This claim is brought by Plaintiff on behalf of herself, the Multi-state Class and the Missouri Subclass.

53. In addition, and as an alternative, to the relief sought herein, Plaintiff seeks a declaration from the Court regarding the rights, obligations and duties of the Policyholders and CUL pursuant to the terms of the Rider.

54. Specifically, Plaintiff requests that the Court declare as follows:

    a. For all Policyholders entitled to a Bonus under the terms of the Rider, CUL is obligated to pay Policyholders the sum of twenty dollars ($20) for every dollar of premiums paid;

    b. For all Policyholders entitled to a Withdrawal Benefit under the terms of the Rider, CUL is obligated to pay Policyholders the sum specifically set forth in the Persistency Bonus and Withdrawal Cash Value Table in the particular Policyholder's particular policy year, for every dollar of premiums paid;

    c. For all Policyholders who have previously received a Bonus or Withdrawal Benefit from CUL pursuant to a Rider, CUL is obligated to provide such Policyholders with the amount such Policyholders should have received in accordance with subparagraphs (a) and (b) above,

15
Case 2:09-cv-04030-NKL   Document 75   Filed 12/04/09   Page 15 of 20

including interest at the statutory rate from the day such Policyholders were paid by CUL to the date upon which CUL provides the additional amounts described in this subparagraph.

d. CUL's failure to provide Bonuses and Withdrawal Benefits in the manner contemplated by subparagraphs (a) and (b) above was, and is, unlawful, a breach of the Rider and a breach of CUL's duty of good faith and fair dealing.

## COUNT II
## BREACH OF CONTRACT

COMES NOW Plaintiff Mary Moss and for Count II of this Complaint, states and alleges as follows:

55. To the extent they are not inconsistent, Plaintiff incorporates by reference the allegations set forth above in this Complaint as if more fully set forth herein.

56. This claim is brought by Plaintiff on behalf of herself, the Multi-state Class and the Missouri Subclass.

57. CUL agreed to abide by the terms of the Rider, and pay Policyholders all amounts due and owing for Bonuses and Withdrawal Benefits pursuant to the Rider.

58. The Plaintiff and members of the class agreed to make premium payments to CUL pursuant to the terms of the underlying policies and Rider, in exchange for the Bonus and Withdrawal Benefit promised by the Rider.

59. The Plaintiff and the class members have fully performed their obligations under the Rider.

60. CUL has failed to perform and materially breached the Riders in numerous respects, including but not limited to:

16

a. by paying less than the full amount due and owing to Policyholders for Bonuses;

b. by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits;

61. As a direct and proximate result of CUL's breach of the Riders, the Plaintiff, Policyholders and the putative class have suffered pecuniary damages, damages under the Riders, plus interest, and other economic, non-economic, general, special, incidental and consequential damages, for a total amount currently unknown but which will be shown at the time of trial.

**WHEREFORE,** Plaintiff Mary Moss, on behalf of herself and all other class members, respectfully request this Court to enter judgment in favor of the Plaintiff and the putative class members and against Defendant Central United Life Insurance Company, and award the Plaintiff and the class members their actual damages in an amount to be determined at trial, with prejudgment and post judgment interest at the statutory rate, as well as their attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

## COUNT III
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

COMES NOW Plaintiff and for Count III of this Complaint against CUL, state and allege as follows:

62. To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth above in this Complaint as if more fully set forth herein.

63. This claim is brought by Plaintiff on behalf of herself, the Multi-state Class and the Missouri Subclass.

17

64. CUL had a duty to exercise, and act in, good faith and fair dealing in the performance of the Rider.

65. CUL agreed to abide by the terms of the Rider and pay Policyholders all amounts due and owing for Bonuses and Withdrawal Benefits pursuant to the Rider, and otherwise comply with its duty of good faith and fair dealing inherent in the Rider.

66. The Plaintiff and members of the class agreed to make premium payments to CUL pursuant to the terms of the underlying policies and Rider, in exchange for the Bonus and Withdrawal Benefit promised by the Rider.

67. The Plaintiff and the class members have fully performed their obligations under the Rider.

68. CUL breached its implied duty of good faith and fair dealing in the performance of the Rider in certain particulars, including but not limited to:

    a. by paying less than the full amount due and owing to Policyholders for Bonuses pursuant to the Rider;

    b. by paying less than the full amount due and owing to Policyholders for Withdrawal Benefits pursuant to the Rider;

    c. by increasing Policy premiums in order to increase the lapse rate of Policies, thereby avoiding its obligations for payment of the Withdrawal Benefits and Persistency Bonus pursuant to the Rider;

    d. by misrepresenting the benefits payable for Bonuses pursuant to the Rider;

    e. by misrepresenting the benefits payable for Withdrawal Benefits pursuant to the Rider;

69. As a direct and proximate result of CUL's breach of the Riders, the Plaintiff, Policyholders and the putative class have suffered pecuniary damages, damages under the Riders, plus interest, and other economic, non-economic, general, special, incidental and consequential damages, for a total amount currently unknown but which will be shown at the time of trial.

**WHEREFORE,** Plaintiff Mary Moss, on behalf of herself and all other class members, respectfully request this Court to enter judgment in favor of the Plaintiff and the putative class members and against Defendant Central United Life Insurance Company, and award the Plaintiff and the class members their actual damages in an amount to be determined at trial, with prejudgment and post judgment interest at the statutory rate, as well as their attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

## COUNT IV
## INJUNCTIVE RELIEF

COMES NOW Plaintiff and for Count IV of this Complaint against CUL, state and allege as follows:

70. To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth above in this Complaint as if more fully set forth herein.

71. This claim is brought by the Plaintiff on behalf of herself, the Multi-state Class and the Missouri Subclass.

72. After notice to CUL, Mrs. Moss requests an order enjoining CUL from committing the acts set forth above, and such other injunctive relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein.

Respectfully Submitted,

Michael K. Cully    MO 26794
Angela K. Drake    MO 35237
LOWTHER JOHNSON
901 St. Louis, 20th Floor
Springfield, Missouri 65806
(417) 866-7777 – Telephone
(417) 866-1752 – Facsimile
mcully@lowtherjohnson.com
adrake@lowtherjohnson.com

___/s/ Robert A. Horn_____
Robert A. Horn    MO 28176
Joseph A. Kronawitter    MO 49280
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd, Suite 1100
Kansas City, MO 64108
(816) 421-0700 – Telephone
(816) 421-0899– Facsimile
rhorn@hab-law.com
jkronawitter@hab-law.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

    I hereby certify that on December 4, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

    _____/s/ *Joseph A. Kronawitter*____
    **Attorney for Plaintiffs**

20
Case 2:09-cv-04030-NKL   Document 75   Filed 12/04/09   Page 20 of 20